UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

GLENN COY UTT, III )
 )
v. ) NO. 2:10-CV-01
 ) *Greer/Inman*
ROOKIE INMAN, HAMBLEN COUNTY )
JAIL, and ESCO JARNIGAN )

## MEMORANDUM and ORDER

Glenn Coy Utt, III, a prisoner in the Hamblen County jail, has filed this *pro se* civil rights suit for injunctive and monetary relief under 42 U.S.C. § 1983, alleging that he is being held in isolation in the jail due to a vendetta against him by unknown persons —though he knows that defendant Rookie Inman is part of it, subjected to unconstitutional conditions of confinement, and denied visitation.

### I. Filing Fee

Although plaintiff's application to proceed *in forma pauperis* reflects that he has a zero balance in his inmate trust account, it remains that, as a prisoner, he is responsible for paying the filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff therefore is **ASSESSED** the full filing fee of three-hundred, fifty dollars ($350.00). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997)*, overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

The custodian of plaintiff's inmate trust account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, twenty percent (20%) of plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at plaintiff's current place of confinement to ensure compliance with the assessment

procedures outlined herein. All payments should be sent to: <u>Clerk's Office, USDC; 220 W. Depot Street, Suite 200; Greeneville, TN 37743.</u>

## II. Screening

The Court now must screen the complaint to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or because monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. In performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. Plaintiff's Allegations

Plaintiff alleges first that, on several occasions, he has been accepted as an inmate at the Sneedville jail, but that defendant Inman refuses to let him go there. Also, defendant Inman was rude to plaintiff's mother when she called to discuss her son's problems. Plaintiff further charges that law enforcement officers are conspiring with the victims, with whom the officers are affiliated, to keep plaintiff in isolation so as to prevent him from obtaining good time credits and to torture him.

Next, plaintiff complains about the living conditions at the jail. He maintains that water leaks from the ceiling; that the ceiling is falling on the floor and has mold on it; that space is limited in the one-man cell in which he is locked down 22 hours per day, with two or sometimes three other cell mates; and that he has a difficult time using the toilet in the cell, which has kept him constipated for months and is causing damage and constant burning to his system. He insists that he needs to be able to exercise or just move around because the laxatives the nurses give him provide him temporary relief at best. Furthermore, his mental state is deteriorating because

2

Case 2:10-cv-00001   Document 4   Filed 02/14/12   Page 2 of 7   PageID #: 13

he has not seen his daughter, nieces, or nephews in more than a year because they are underage. Plaintiff asks for a transfer to another facility, an explanation as to why he is being held in isolation, and compensation for the unfair treatment and the pain and suffering resulting from the unconstitutional conditions to which he is being exposed.

The Court infers that plaintiff is alleging, in his complaint, violations of his rights under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment's "Cruel and Unusual Punishments" provision, and the First Amendment's freedom of association guarantee.

### IV.  Law & Analysis

At the outset, plaintiff has named the Hamblen County jail as a defendant. However, the jail itself cannot be sued under 42 U.S.C. § 1983 because it is a building and not a "person" subject to suit within the meaning of that statute. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 & n.55 (1978) (For purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate."). Thus, the Hamblen County jail is **DISMISSED** as a defendant in this case. Furthermore, no allegations of wrongdoing have been made against defendant Esco Jarnigan, and he too is **DISMISSED** as a defendant for failure to state a claim against him.

1. Transfer/Isolation Unit

Plaintiff's first substantive claim concerns his inability to obtain a transfer from the Hamblen County jail or from his assigned isolation unit in the facility. The Fourteenth Amendment to the United States Constitution protects against a state actor depriving a person of life, liberty, or property without due process of law. *See e.g., Bailey v. Floyd County Bd. Of Educ.*, 106 F.3d 135, 140-141 (6th Cir. 1999). Plaintiff's allegations do not support a Fourteenth Amendment due process claim.

In *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005), the Sixth Circuit recited the law regarding an inmate's transfer to another prison.

> In fact, a prison inmate does not have a liberty interest in transfer from one prison to another for whatever reason or for no reason at all, within the State or to another State, regardless of differing conditions in the prisons. Even a transfer to a maximum security facility with more burdensome conditions is within the normal limits or range of custody which the conviction has authorized the State to impose. This is true even though such a transfer operates as a real hardship on the inmate who is effectively separated by the transfer from his only contact with the world outside the prison. Analysis of the nature of the interest involved ... compels the conclusion that such a transfer, even with its changed conditions of confinement, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself.

*Id.* at 804 (internal quotation marks and all citations omitted). Because there is no due process right not to be transferred to a more restrictive institution, by logical extension there is no right to be moved to a facility more to plaintiff's liking. *Montayne v. Haynes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Also, an inmate has no constitutional right to be confined in a particular cell within a prison, *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir.1988), *aff'd sub nom., Neitzke v. Williams*, 490 U.S. 319 (1989) (stating that prisoners have no protected interest in a particular housing assignment), or for that matter in any particular prison. *Montayne*, 427 U.S. at 242; *Meachum*, 427 U.S. at 224. Although a prisoner's confinement which imposes an atypical or unusual hardship on him in relation to the ordinary incidents of prison life or which will inevitably affect the duration of his sentence, may implicate due process protections, *Sandin v. Connor*, 515 U.S. 472, 487 (1995), there is no indication in the pleadings that the housing assignment complained of here has risen to the level of a due process violation.

Therefore, plaintiff has failed to state a cognizable constitutional claim with respect to his transfer or his cell assignment. *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (observing

4

"that inmates have no right to preferable housing assignments") (citing *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *overruled on other grounds by Sandin v. Connor*).

2. <u>Housing Conditions</u>

Plaintiff's next subset of claims involves the living conditions at the jail. They include allegations of water leaks, falling ceiling, mold, overcrowding, and the lack of exercise. The Eighth Amendment to the United States Constitution proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To prevail on an Eighth Amendment claim, an inmate must show a "sufficiently serious" deprivation and a sufficiently culpable state of mind —one of deliberate indifference—on the part of the prison authorities. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

When prison conditions are concerned, an extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36 (emphasis in original). Furthermore, overcrowding, in and of itself, is not necessarily unconstitutional, *Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996), even if it results in restrictive and harsh conditions, unless the inmate is thereby deprived of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

5

Even so, the Court cannot say, at this juncture in this case, that plaintiff's assertions regarding the conditions under which he is confined fail to state a claim or that they are frivolous or malicious. *See, e.g,. Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir. 1996) (Among factors to be considered in an overcrowding claim are "the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, . . . opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers."). These claims may advance.

3. Family Visitation

Likewise, the Court cannot say that plaintiff fails to state a claim under the First Amendment by alleging that his mental state is deteriorating because he has not seen his daughter, nieces, or nephews in more than a year because they are underage. Nor does the Court view these assertions as frivolous since the Supreme Court has not held, nor implied, "that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners," though it has noted that "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta* 539 U.S. 126, 131, 123 S.Ct. 2162, 2167 (2003). These allegations may also proceed.

## IV. Service

The Clerk is **DIRECTED** to send plaintiff a service packet (a blank summons and USM 285 form) for defendant Rookie Inman. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office **within twenty (20) days** of the date on this Order. At that time the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to return the completed service packet within the time required could jeopardize his prosecution of this action.

6

Defendant **SHALL** answer or otherwise respond to the complaint **within twenty (20) days** from the date of service.

**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

7

Case 2:10-cv-00001   Document 4   Filed 02/14/12   Page 7 of 7   PageID #: 18